FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

98 DEC -3 AM 9: 22

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CV-97-J-3126-S |
| | ) | |
| INDUSTRIAL DISTRIBUTION SERVICES WAREHOUSE, INC., et al., | ) ) ) | |
| Defendants. | ) | |

**ENTERED**

DEC 3 1998

## MEMORANDUM OF DECISION

This cause is presently before the Court on Plaintiff Colony Insurance Company's (Colony) Motion for Summary Judgment.[1] This case has been considered on the record, briefs and oral arguments held on November 30, 1998.

**I.    Facts and Procedural History**

On October 2, 1997, the Industrial Distribution Services Warehouse (IDSW) in Birmingham, Alabama, caught fire. At the time of the blaze, IDSW was storing, among other items, a sizeable quantity of the chemical Dursban. Dursban is a synonym for the compound chlorpyrifos. Chlorpyrifos is listed in the Code of Federal Regulations Table 116.4A's list of hazardous substances. 40 C.F.R. 116.4 (1998). The fire department used water to extinguish the IDSW fire allowing a mixture of Dursban and water to form. The

---

[1]    On November 19, 1998, Plaintiff filed a Motion to Strike portions of the reply brief of Industrial Distribution Services Warehouse, Inc. and the affidavit of J.R. Harris. The Court will not address the motion to strike at this time because it finds summary judgment to be proper even with consideration of the challenged portions of the affidavit and brief.

98

Dursban-water mixture allegedly contaminated several local waterways causing fish kills and other damage. Several individuals and associations of affected persons along with the Attorney General of the State of Alabama have filed suit against IDSW in Alabama Circuit Court for the Tenth Judicial Circuit for personal injury and property damage related to the alleged Dursban runoff.

At the time of the fire, IDSW had a general commercial liability Policy, # GL1 405449-1, with Colony Insurance Company.[2] When IDSW was sued in state court for personal injury and property damage caused by the Dursban runoff, it sought indemnification and defense from Colony. Colony contended that the alleged incident was excluded from coverage under the "Total Pollution Exclusion" endorsement to Policy # GL1 405449-1. Colony seeks from this Court a declaration that its interpretation of the policy is correct and that it owes IDSW neither indemnification nor defense under the policy in question.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "When the moving party has the burden of proof at

---

[2] Policy number GL1 405449-1 was issued by Colony to IDSW for coverage effective from February 2, 1997, through February 2, 1998.

trial, that party must show affirmatively the absence of a genuine issue of material fact: it 'must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.' In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (citations omitted).

### III. Discussion

Because jurisdiction in this case is based upon diversity of citizenship, Alabama substantive law governs this action. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). This Court's research reveals no Alabama case law directly on point. Thus, this Court will "decide the case the way it appears the state's highest court would." *Towne Realty, Inc. v. Safeco Ins. Co.*, 854 F.2d 1264, 1269 n. 5 (11th Cir 1988).

Alabama law provides that insurance contracts are to be "construed to give effect to the intention of the parties thereto, and when the intention is clear and unambiguous, the policy must be enforced as written." *State Farm Mutual Automobile Ins. Co. v. Lewis*, 514 So. 2d 863, 865 (Ala. 1987) (citations omitted). Further,

> [i]n determining the intent of the parties, the court must read each phrase in the context of all other provisions and must not view the terms in isolation. However, it is also well established that such exclusions "are to be interpreted as narrowly as

possible in order to provide maximum coverage for the insured," and moreover, "such clauses must be construed most strongly against the company that issued the policy." Furthermore, "if ambiguity exists in the language of the exclusion, the exclusion will be construed narrowly so as to limit the exclusion to the narrowest application reasonable under the wording.

*Shalimar Contractors, Inc. v. American States Ins. Co.*, 975 F. Supp. 1450, 1454 (M.D. Ala. 1997).

Under Alabama law, "'an insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured.'" *Ajdarodini v. State Auto Mutual Insurance Co.*, 628 So. 2d 312, 313 (Ala. 1993) (citation omitted). The language Policy # GL1 405449-1 states:

THESE ENDORSEMENTS CHANGE THE POLICY.  PLEASE READ THEM CAREFULLY.

TOTAL POLLUTION EXCLUSION ENDORSEMENT

This insurance does not apply to:

A. "Bodily Injury", "Property Damage", "Advertising Injury" or "Personal Injury" which would not have occurred in whole or part but for actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

B. Any loss, cost or expense arising out of any:

1. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

2. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.
>
> This exclusion applies whether or not such injury or damage is included within the "Product /Completed Operations Hazard".

*See* Policy # GL1 405449-1.

Based upon the arguments in open court, none of the parties seriously disputes Dursban's categorization as a "pollutant" as defined in Policy # GL1 405449-1. The Code of Federal Regulations lists it as a hazardous compound. Further, the *Ajdarodini* rationale focuses the analysis on the "allegations in the complaint giving rise to the action against the insured." *Ajdarodini* at 313. The complaints in the underlying state actions allege personal injury and property damage resulting from the runoff of the Dursban-water mixture. Thus, Dursban is a pollutant for purposes of this Court's summary judgment analysis.

This pollution exclusion was clearly attached as an endorsement to the policy. It was also clearly marked on the list of endorsements at the beginning of Policy # GL1 405449-1. No party avers that IDSW was unaware of the "total pollution exclusion" at the time it purchased the policy. In fact, the parties admitted in open court that IDSW could have purchased pollution coverage for a higher premium. It did not.

The language of the exclusion is plain on its face. Policy # GL1 405449-1 excluded coverage for pollution "at any time." IDSW leans heavily on *Molton, Allen and Williams, Inc. v. St. Paul Fire and Marine Ins. Co.*, 347 So. 2d 95 (Ala. 1977) and

*USF&G Co. v. Armstrong,* 479 So. 2d 1164 (Ala. 1985). However, these cases interpret the so-called "sudden and accidental" pollution exclusion which is a much different pollution exclusion than the one at issue in this case.[3] "Sudden and accidental" exclusions provide coverage for sudden and accidental pollution. A policy containing such an exclusion might have provided coverage for IDSW under the facts of this case. However, it is undisputed that Policy # GL1 405449-1 contained no such "sudden and accidental" exclusion.

The "total pollution exclusion" made a part of Polciy # GL1 405449-1 is "clear and unambiguous". *State Farm Mutual Automobile Ins. Co. v. Lewis*, 514 So. 2d 863, 865 (Ala. 1987). No party has disputed that the language of the policy itself is plain and unambiguous. The only arguments regarding the clarity of the policy language centered on extreme hypotheticals and possible interpretations of the policy language in those circumstances. The language of the policy is plain. And, "the policy must be enforced as written." *Ibid.*

Since Dursban is "pollutant" for purposes of Policy # GL1 405449-1, any personal injury or property damage caused by its "discharge, dispersal, seepage, migration, release or escape ... at any time" is not covered under the policy. Since the state court actions are

---

[3] The "total pollution exclusion" at issue in this case is the third-generation of pollution exclusions drafted by the insurance industry. The first generation of exclusions was the so-called "sudden and accidental" exclusion. The majority of Alabama cases in this area address this type of pollution exclusion. The second generation was deemed the "absolute pollution exclusion". The language in the "absolute" and "total" exclusions are very similar except that the "total pollution exclusion" at issue in this case is more broad than any "absolute pollution exclusion" cited to this Court.

based on such theories, Colony is not bound to defend or indemnify IDSW in those actions.

## V.     Conclusion

Based upon the foregoing analysis, the Court finds that Colony has satisfied its burden of "affirmatively [demonstrating] the absence of a genuine issue of material fact". *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (citations omitted). The defendants have not come "'forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'". *Id.* This Court holds that Colony is under no obligation to defend or indemnify Industrial Distribution Services Warehouse, Inc. No genuine issues of material fact remain. Summary judgment is **GRANTED** in favor of Colony by a separate order entered this day.

_____
Inge P. Johnson
United States District Judge